**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PRIME UNITED INC.** | ) | |
| | ) | |
| **Claimant-Counterrespondent,** | ) | |
| | ) | **No. 12 C 5364** |
| **v.** | ) | |
| | ) | |
| **SEARS HOLDINGS MANAGEMENT CORPORATION** | ) | **Judge John J. Tharp, Jr.** |
| | ) | |
| | ) | |
| **Respondent-Counterclaimant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Prime United Inc. ("Prime") moves pursuant to the Federal Arbitration Act ("FAA") to vacate and modify an arbitration award entered in favor of Sears Holdings Management Corporation ("Sears").[1] In response, Sears applies to confirm the arbitration award. For the reasons stated below, the Court denies Prime's motion to modify and vacate the arbitration award and grants Sears' application to confirm the arbitration award because Prime has failed to demonstrate any ground to vacate or modify the award.

## I. Background

Prime manufactures shoes, and Sears sells them at retail. On August 5, 2008, Prime and Sears entered into a Universal Terms and Conditions Agreement ("Agreement") that would govern future purchase orders for the supply of merchandise from Prime to Sears. Agreement (Dkt. 1-1). In pertinent part, Prime represented and warranted that its merchandise would not infringe on any intellectual property rights, and it would produce its merchandise in compliance with applicable law. *Id.* §§ 8.3-8.4. Furthermore, in the event of allegations that Prime's

[1] Although Prime originally filed a "Complaint to Vacate and Modify Arbitration Award," the Court entered an order on August 15, 2012 stating that it would treat the filing as a motion to vacate and modify the arbitrator's award.

merchandise infringed on intellectual property rights or violated the law, Prime agreed to indemnify and defend Sears, and gave Sears the right to immediately cancel any outstanding purchase orders. *Id.* § 14. Sears's monetary obligations to Prime would at all times be net of any defense and indemnity obligations. *Id.* The parties also agreed that if they could not resolve a dispute via mediation, they would submit it to arbitration. *Id.* § 17.6

The parties' commercial relationship did not go smoothly. Sears alleges that in August of 2010, it received a letter from another footwear manufacturer, Skechers, claiming that Prime's shoes infringed on Skechers's intellectual property rights. Sears Resp. Br. (Dkt. 11) at 2. After Prime allegedly refused to indemnify and defend Sears from Skechers' claims in accordance with the Agreement, Sears withheld a $181,000 payment for shoes that it had already received from Prime, and canceled nearly $475,000 in additional purchase orders for shoes that had not yet been delivered. *Id.*

Prime claimed that Sears violated the Agreement by failing to pay for the shoes it received and by cancelling its purchase orders. Arb. Demand (Dkt. 1-1). Prime demanded arbitration, and argued: (1) that the arbitrator should award Prime $181,000, representing the amount that Sears owed, but withheld, for the shoes that it had received from Prime; and (2) that the arbitrator should award $474,181.70, representing the purchase price of shoes that Sears ordered but later canceled. *Id.* Sears asserted two counterclaims against Prime: (1) Prime should reimburse Sears in the amount of $463,525.85 for the attorneys' fees it paid to defend Skechers' claims; and (2) Prime should reimburse Sears for costs and lost revenue that Sears incurred by changing the packaging and advertising of certain of Prime's shoes that allegedly violated Skechers' intellectual property. Award (Dkt. 1-1) at 2. Ultimately, the arbitrator granted Prime's first claim of $181,000, but also partially granted Sears' first claim, ordering Prime to reimburse

Sears $265,000 for attorneys' fees.[2] *Id.* Setting off the two awards, the arbitrator ordered Prime to pay $84,000 to Sears. *Id.* Prime moved the arbitrator to reconsider, but he denied the motion, noting that the parties had "instructed him to provide an unreasoned decision." Order (Dkt. 11-1).

**II. Choice of Law**

The parties agree that the FAA, as opposed to the Illinois Uniform Arbitration Act ("IUAA"), applies to their dispute. *See* Prime Reply Br. (Dkt. 13) at 1 (stating that Sears correctly identified FAA § 10(a)(4) as controlling the motion to vacate). The Agreement contains a general provision stating that it is to be "construed and enforced in accordance with the internal laws of the State of Illinois," Agreement (Dkt. 1-1) § 17.5, but it does not specify whether the FAA or the IUAA applies.

In this case, regardless of whether the FAA or the IUAA applies, the end result would be the same. "The language of the FAA and the Illinois Uniform Arbitration Act is essentially the same." *Gillispie v. Vill. of Franklin Park*, 405 F. Supp. 2d 904, 909 (N.D. Ill. 2005) (collecting cases); *see also Vazquez v. Central States Joint Bd.*, 547 F. Supp. 2d 833, 865 n. 19 (N.D. Ill. 2008); *Rexnord Indus., LLC v. RHI Holdings, Inc.*, 389 Ill. App. 3d 393, 396, 906 N.E.2d 682, 684 (Ill. App. Ct. 2009) (stating that the IUAA's "terms and origins parallel those of the [FAA]," and relying on federal interpretations of the FAA to determine whether the arbitrator exceeded his authority). The IUAA, like the FAA, states that a court shall vacate an arbitration award where "[t]he arbitrators exceeded their powers." 710 Ill. Comp. St. 5/12(3). The standards for vacating an arbitration award are "practically the same" under both statutes. *BEM I, LLC v.*

[2] The arbitrator dismissed Prime's second claim for the purchase price of the orders canceled by Sears and Sears' second claim for reimbursement of costs and lost revenue related to the costs incurred changing packaging and advertising. Award (Dkt. 1-1) at 2.

*Anthropologie, Inc.*, No. 98 C 358, 2000 WL 1849574, *7 n. 7 (N.D. Ill. Dec. 15, 2000).[3] Because the parties frame their dispute in terms of the FAA, and the end result would be the same under either federal or state law, the Court will examine Prime's arguments under the FAA.

## III. Analysis

"Judicial review of an arbitration . . . award is extremely limited," *Yasuda Fire & Marine Ins. Co. of Eur., Ltd. v. Cont'l Cas. Co.*, 37 F.3d 345, 349 (7th Cir. 1994), and parties may not make "[t]hinly veiled attempts to obtain appellate review of an arbitrator's decision." *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 100 (7th Cir. 1996) (quoting *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995)) (internal quotation marks omitted). According to the FAA, a court may vacate[4] an arbitration award only:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10 (2006).

---

[3] One difference of note is that under the IUAA, gross errors of judgment in law or a gross mistake of fact will not vitiate an arbitration award *unless the mistakes or errors are apparent on the face of the award*. *Id.*; *Equity Ins. Managers of Illinois, LLC v. McNichols*, 324 Ill. App. 3d 830, 837, 755 N.E.2d 75, 80 (Ill. App. Ct. 2001). Unlike the FAA, therefore, the IUAA on rare occasions allows a court to overturn an arbitrator's award for gross legal error. Here, however, the award does not provide the reasoning behind the arbitrator's decision, and the arbitrator's arithmetic is correct, so there is no error apparent on the face of the award.

[4] Although Prime has titled its motion "Complaint to Vacate and Modify Arbitration Award," Prime does not make any argument for modification under the FAA in its original motion or in its reply brief. The Court thus limits its discussion to whether the award should be vacated. Regardless, because Prime has not shown that the arbitrator either miscalculated figures, made an award upon a matter not submitted to him, or that the award was in an improper format, there is no basis to modify the award. 9 U.S.C. § 11.

An arbitrator's award should be enforced "so long as it draws its essence from the contract, even if the court believes that the arbitrator misconstrued its provisions." *United Food and Commercial Workers, Local 1546 v. Illinois-American Water Co.*, 569 F.3d 750, 754 (7th Cir. 2009) (internal quotation omitted). The award "draws its essence from the contract" if it is premised on the arbitrator's interpretation of the contract, "correct or incorrect though that interpretation may be." *Id.* "Indeed, it is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract that the award can be said not to draw its essence from the parties' agreement." *Id.* at 755. (emphasis in original, internal alterations omitted). A court may not vacate an award because of the arbitrator's factual or legal errors—even when those errors are clear or gross. *Flexible Mfg. Sys. Pty. Ltd.*, 86 F.3d at 100.

Section 10(a)(4)[5] of the FAA provides that a court may vacate an award if an "arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Prime does not rely on the second clause of this provision and, in any event, the record suggests that the arbitrator resolved the entire dispute submitted to him, and the award is sufficiently clear to be judicially enforceable. *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001) ("mutual" and "final" "mean that the arbitrators must have resolved the entire dispute . . . that had been submitted to them" and "definite" means "that the award is sufficiently clear and specific to be enforced should it be confirmed by the district court and thus made judicially enforceable.").

[5] In Prime's original motion, it does not cite to any particular section of the FAA but does refer to the arbitrator exceeding his authority. Mot. to Vacate (Dkt. 1) ¶¶ 13-14. Prime then clarified in its reply brief that it relies on Section 10(a)(4) of the FAA, arguing that the arbitrator exceeded his powers. *See* Reply Br. (Dkt. 13) p. 1.

Thus, Prime's only argument for vacating the award is the first clause of Section 10(a)(4), that the arbitrator exceeded his powers. In order for the Court to find that the arbitrator exceeded his powers, Prime would have to show that the arbitrator failed to interpret the contract at all, *see Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006); *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008) (stating that the court will uphold an award unless the court infers a non-contractual basis for it because there is no other possible interpretive route), or that the arbitrator was in "manifest disregard of the law." *Wise*, 450 F.3d at 268 (The Seventh Circuit defines "'manifest disregard of the law' so narrowly that it fits comfortably under the first clause of the fourth statutory ground—'where the arbitrators exceeded their powers.'"). Arbitrators are in manifest disregard of the law when they require the parties to violate the law or do not adhere to the legal principles that the contract specifies. *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008).

Prime's argument under this clause essentially boils down to three assertions. First, the arbitrator found that Sears breached the contract by awarding Prime $181,000. Mot. to Vacate (Dkt. 1) ¶¶ 5-9. Second, under Illinois law, this non-payment must be considered a material breach. Reply Br. (Dkt. 13) p. 2-3. And third, Sears's material breach terminated Prime's contractual obligations, so Sears could not take advantage of the contract's indemnification and cancellation provisions. Mot. to Vacate (Dkt. 1) ¶¶ 5-9. The most obvious problem with Prime's argument is that it depends on a finding that Sears breached the Agreement, but the arbitration award does not indicate that the arbitrator found Sears to be in breach. The award merely states: "First, Prime claims that it should be awarded $181,000, the amount that Sears owed, but withheld, for shoes it had received from Prime. This claim is granted." Award (Dkt. 1-1). Because the arbitrator did not provide a reason for the award (apparently at the parties' request),

there is no way of knowing why the arbitrator awarded Prime $181,000, but other plausible explanations exist besides a finding that Sears breached the Agreement. For example, the arbitrator might have determined that *Prime* breached the Agreement by failing to indemnify and defend Sears, but that Prime was equitably entitled to set off $181,000 against the amount of attorneys' fees it owed. In that scenario, Sears would not have committed a material breach, and therefore Sears would have been entitled to cancel its orders and recover its attorneys' fees.

And, even if the arbitrator had specifically stated in the award that Sears breached the Agreement, Prime would still fall short of meeting its heavy burden. Prime has merely argued that the arbitrator erred by either not finding a material breach, not finding that the material breach would require rescission of the contract, or finding that Prime affirmed the contract after Sears materially breached. *See Flexible Mfg. Sys. Pty. Ltd.*, 86 F.3d at 100 (stating that factual or legal errors—even when clear or gross—are not enough for a court to vacate an award). But even if the arbitrator made those errors, that does not show that the arbitrator failed to interpret the contract at all or that he was in manifest disregard of the law. To succeed on its motion to vacate, Prime was required to show that "the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract." *United Food*, 569 F.3d at 755 (emphasis in original). Prime does not come close to meeting this standard, instead merely disputing the arbitrator's interpretation of the Agreement. But it is not the province of the federal courts to examine whether arbitrators' contract interpretations are correct. *Flexible Mfg. Sys. Pty. Ltd.*, 86 F.3d at 100. Because Prime agreed to arbitrate its dispute, legal error by the arbitrator is immaterial.

In addition to asking the Court to confirm the arbitration award, Sears also asks for an award of post-Judgment interest accruing at 9% from April 12, 2012, the date of the arbitration

award, pursuant to 735 ILCS 5/2-1303 (recall that the parties agreed that their contract is governed by Illinois law, but federal law also holds that post-award interest assessment is appropriate; *see, e.g.*, *Trustmark Ins. Co. v. Clarendon Nat. Ins. Co.*, No. 09 C 1673, 2009 WL 4043110, *3 (N.D. Ill. Nov. 20, 2009)). Illinois law states that "[w]hen judgment is entered upon any award, . . . interest shall be computed at [9% per annum], from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment." 735 ILCS 5/2-1303. This statutory imposition of interest applies to arbitration awards, *Robertson-Ceco Corp. v. Nat'l Union Fire Ins. Co.*, 292 F. Supp. 2d 1082, 1085 (N.D. Ill. 2003), and the Court has no discretion to decline to award post-judgment interest. *See id.*; *Cerajewski v. Kunkle*, 285 Ill. App. 3d 222, 227, 674 N.E.2d 57, 61 (1st Dist. 1996). Interest began accruing the arbitrator's $84,000 judgment on April 12, 2012. As of July 16, 2013, interest has accrued for one year, three months, and four days. Calculating the post-judgment interest by the method provided under Illinois law, a total of $9,534 in post-judgment interest is due thus far. *See Halloran v. Dickerson*, 287 Ill. App. 3d 857, 870, 679 N.E.2d 774, 783 (5th Dist. 1997) (describing method for calculating post-judgment interest). Interest will continue to accrue at a rate of $21 per day until full, formal tender has been made.

* * *

For the reasons set forth above, the Court denies Prime's motion to vacate and modify the arbitration award and grants Sears' application to confirm the arbitration award and to award post-judgment interest. Judgment is entered for Defendant Sears Holdings Management Corporation in the amount of $93,534.00, with additional post-judgment interest accruing until the Judgment has been satisfied.

Entered: July 16, 2013

John J. Tharp, Jr.
United States District Judge